UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:02CV-252-R

WAL JUICE BAR, INC., et al.                                                              PLAINTIFFS

v.

CITY OF OAK GROVE, KENTUCKY, et al.                                          DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court for a ruling on the constitutionality of the ordinance in

question after cross-Motions for Summary Judgment (Dkt. Nos. 11 and 12) of Defendants City

of Oak Grove, Kentucky, Jean Levell, and Colleen Ochs and Plaintiffs Wal Juice Bar, Inc., d/b/a

The Cat West ("Wal Juice Bar"), Mara Davidowski Cuevas, Malisa Brandt, and Laurie Arbaugh

("Individual Plaintiffs").  Both sides filed responsive pleadings (Dkt. Nos. 14 and 15), as well as

replies (Dkt. Nos. 18 and 19), and Senior Judge Edward H. Johnstone denied Plaintiffs' motion

for summary judgment and partially granted Defendants' motion.  After transfer of the case to

this Court, Plaintiffs filed a brief (Dkt. # 33) to which Defendants responded (Dkt. # 36), and

Plaintiffs replied (Dkt. # 37).  This matter is now ripe for decision.  For the reasons given below,

the remaining portion of Defendants' motion for summary judgment is **DENIED**.

**BACKGROUND**

From the mid-1980s to the present day, Wal Juice Bar has operated The Cat West in the

City of Oak Grove as an adult club featuring live, nude and semi-nude dancers. The operation of

the club has been governed, since September of 1998, by Oak Grove's Ordinance no. 1998-7, (as

amended, hereinafter "Ordinance") which regulates "sexually oriented businesses."  That

ordinance was amended in June 2000 by Ordinance no. 2000-11.  The Cat West is operated

under a license, the conditions for which are prescribed by the Ordinance.  This case arises out of

a number of arrests which occurred in July 2002; specifically, law enforcement officers arrested

the manager and four other people at The Cat West on suspicion of various drug- and weapons-

related crimes.  Section 3.08 of the Ordinance provides, in relevant part, that:

> The City Clerk shall suspend a license for a period not to exceed sixty (60) days if he/she
> determines that the licensee or an employee of a licensee has, subsequent to the issuance
> of the license:
> 2. Been charged with a violation of any statute, ordinance, or other law pertaining to the
> possession, use, or consumption of alcoholic beverages or any other controlled substance
> while on the business premises during business hours...

Further, Section 3.09 provides for revocation of a license if the City Clerk determines that a

"licensee or an employee has knowingly allowed the unlawful possession, use, or sale of

alcoholic beverages or controlled substances on the premises" of the regulated business.

Pursuant to this section and Section 3.10, which governs the procedures for suspension and

revocation of licenses under the Ordinance, the City Clerk sent written notice of a proposed

sixty-day suspension of The Cat West's license, to which The Cat West responded by denying

that the suspension was appropriate.  The City Clerk never held the hearing which was required

by the Ordinance after The Cat West's response, and no final notice of suspension was ever sent

to The Cat West.  It appears that the matter has been held in abeyance pending the outcome of

this lawsuit, and The Cat West has continued to operate since that time.

In September of 2002, Wal Juice Bar and the Individual Plaintiffs brought suit in this

Court, and in September of 2004 filed an Amended Complaint (Dkt. # 24) seeking a declaratory

judgment as to the constitutionality of the Ordinance as well as a preliminary and permanent

injunction preventing the City of Oak Grove and its officers from enforcing the Ordinance.

2

Plaintiffs allege that the Ordinance is unconstitutional on its face and as applied to them, and that

it "is unconstitutional in that it is impermissibly vague and overly broad and in violation of the

First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and Sections

1, 2, 3, 8, and 10 of the Kentucky Constitution." *Id.* at 1-2.  In this way, Plaintiffs challenged a

number of separate aspects of the Ordinance.  Judge Johnstone's Order of September 28, 2004

(Dkt. # 23) denied Plaintiffs' Motion for Summary Judgment (Dkt. # 11) and further ordered that

"[d]efendants' motion for summary judgment (docket number 12) is denied with respect to

plaintiffs' claim that the renewal fee is excessive and is otherwise granted."  Partial Summary

Judgment, Dkt. # 23, at 1.  Therefore, although Plaintiffs now seek to contest issues not

specifically addressed in the Memorandum Opinion associated with the Partial Summary

Judgment, the order is clear that the only issue that remains is the constitutionality of the amount

of the renewal fee charged to businesses operating under the provisions of the Ordinance.[1]  As to

this issue, the Memorandum Opinion says the following:

> With respect to plaintiff's allegation that the $1000 annual license fee is exorbitant and is
> set at that level in order to discourage legitimate First Amendment expression, the Court
> is of the opinion that Wal Juice [Bar] is in a position to raise the challenge here,
> notwithstanding the fact that Wal Juce [Bar] has previously paid this fee without
> objection.  This Court's reading of The Ordinance fails to reveal a provision for
> maintaining the status quo in the event of non-payment of the license fee.  That is, Wal
> Juice [Bar] would have no way of challenging the amount of the fee without abandoning
> its business of engaging in protected expression.  As this appears to be a matter of factual
> dispute which has been explored in discovery but has not been presented to the Court, it
> is not appropriate for summary judgment at this time.

*Id.* at 6.  Since that time, both parties have filed briefs on the issue of the constitutionality of the

---

[1]The Court also notes that the Memorandum Opinion holds that the Individual Plaintiffs
do not have standing to contest the constitutionality of the Ordinance; therefore, the remaining
claim involves only Wal Juice Bar because the Individual Plaintiffs were dismissed as part of the
grant of summary judgment.

license fee, and the parties have jointly filed discovery documents to which they stipulated for

the Court's consideration in ruling on the remaining issue.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can

establish that the "pleadings, depositions, answer to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."  In determining whether

summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable

inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material

fact."  *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the

party bearing the burden of proof has presented a jury question as to each element in the case."

*Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere

scintilla of the evidence.  To support his position, he must present evidence on which the trier of

fact could find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52

(1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere

existence of a colorable factual dispute will not defeat a properly supported motion for summary

judgment.  A genuine dispute between the parties on an issue of material fact must exist to

render summary judgment inappropriate."  *Monette v. Electronic Data Systems Corp.,* 90 F. 3d

1173, 1177 (6th Cir. 1996).  Finally, while Kentucky state law is applicable to this case pursuant

to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the

standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in

*Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General*

*Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## ANALYSIS

**Constitutionality of the License Fee**

Section 3.04 of the Ordinance provides that: "[e]very person who engages in operating an

adult entertainment establishment as defined herein shall in lieu of the regular occupational

license fee charged by the City pay an annual license tax of $1,000.00 per year...".  Section VII

of Ordinance no. 1988-01 provides that for wholesale and retail businesses, the initial "license

tax" that must be paid is $75.00, and for professional businesses it is $100.00.  After the initial

tax is paid, each subsequent year's tax is calculated as a percentage of the gross receipts reported

by the business on its city business license return.  (These percentages vary between .015% and

.06% depending upon the nature of the business.)  The licensing scheme for businesses which

are not sexually oriented also exempts certain businesses from the license tax entirely.

Wal Juice Bar argues that the large discrepancy between the amount of the sexually-

oriented business license fee and the standard business license tax constitutes a prior restraint on

protected expression that violates the First Amendment.  Although a municipality may not

impose a tax on constitutionally-protected speech, it may impose on businesses engaging in and

profiting from such speech a fee calculated "to meet the expense incident to the administration of

the act and to the maintenance of public order in the matter licensed." *Cox v. State of New*

*Hampshire*, 312 U.S. 569, 577, 61 S.Ct. 762, 85 L.Ed. 1049 (1941) (internal quotation marks

omitted).  The municipality seeking to impose such a regulation must present evidence that the

fee is so designed.  *See, e.g., Kentucky Restaurant Concepts, Inc. v. City of Louisville, Jefferson County, Kentucky*, 209 F. Supp.2d 672, 692 (W.D. Ky. 2002); *Bright Lights, Inc. v. City of Newport*, 830 F. Supp. 378, 385 (E.D. Ky. 1993).  Those two cases from our sister courts (*Kentucky Restaurant Concepts* and *Bright Lights, Inc.*) comprise the bulk of the precedent relied upon by the two parties, and a brief discussion of those two cases will be of significant help in framing the analysis of the constitutional issue raised in the case at bar.

In *Bright Lights, Inc.*, the District Court for the Eastern District of Kentucky was faced with a challenge to the constitutionality of several portions of a comprehensive regulatory scheme designed by the city of Newport to clean up its central business district, which the court described as having "gained a reputation as home to a veritable smorgasbord of vice."  830 F.Supp. 380.  Part of the ordinance regulating adult entertainment included a licensing fee of $5000.00.  *Id.* at 385.  The court noted that "any taxes or licensing fees that single out expressive activity must be necessary 'to achieve an overriding governmental interest.'" *Id.*, quoting *Minneapolis Star v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 582, 103 S.Ct. 1365, 1370, 75 L.Ed.2d 295 (1983).  Further, the court said, "such fees must go to defraying the costs incurred in policing such activities, or their undesirable secondary effects." *Id.*, citing *Ellwest Stereo Theater, Inc. v. Boner*, 718 F.Supp. 1553, 1574 (M.D.Tenn.1989).  In order to prove that the fee satisfied these requirements, the city of Newport "submitted extensive surveys and figures which justify the special adult bar licensing fee." *Id.*  The city of Newport submitted specific figures detailing the policing and surveillance costs to the city that resulted from the adult entertainment establishments in the city; further, the court further found that the surveillance and policing activities led to a significant number of criminal convictions for acts

taking place on the premises of adult entertainment establishments, including prostitution-related crimes and other crimes such as drug-related and violent crimes. *Id.* The court finally upheld the $5000.00 fee because it found that it "was devised nearly precisely to meet the expenses of the City's additional policing measures." *Id.* at 386.

The situation facing the court in *Kentucky Restaurant Concepts, Inc.* was quite a different one. The city of Louisville had imposed a $5000.00 annual licensing fee on adult cabarets, a $3000.00 fee on non-adult cabarets, and a $100.00 licensing fee for entertainers working in either type of cabaret. 209 F.Supp.2d 672, 691. Unlike the city of Newport, however, "[i]n its post-hearing brief, the City [of Louisville] devotes a completely inadequate four sentences to justifying its licensing fees. While the City [of Louisville] conclusorily refers to its 'evidence,' it fails to explain the amount or nature of its costs, or indicate where in the record this material may be located." *Id.* at 692 (internal footnote omitted). The court then examined what evidence was available in the record, and found two exhibits which provided some information about the cost of enforcing Louisville's sexually-oriented business ordinance. Nevertheless, it noted that:

> What these documents do not contain... is any semblance of a comprehensive explanation of how the City utilized these figures to arrive at the specific ... fees for the different types of licenses. The Court need not conclude, and cannot on this evidence, that these license fees do tax expression. However, the City's proof falls far short of the necessary detailed evidentiary showing that the licensing fees were carefully tailored to the cost of maintaining the regulatory scheme.

*Id.* at 693. On this basis, the court enjoined enforcement of the license fee provisions of the city of Louisville's sexually-oriented business ordinance.

In the case of the City of Oak Grove's response to Wal Juice Bar's challenge to its licensing fee provision, the Court has even less proof in support of the reasoning behind the choice of $1000.00 as the licensing fee for sexually-oriented businesses. As in *Kentucky*

7

*Restaurant Concepts*, the City has failed to marshal evidence relating to the cost of enforcing the Ordinance.  It notes that "...it is apparent that police presence was a regular occurrence at the Cat West" and that there were a "vast amount of police resources needed by the City to respond to problems arising out of sexually oriented businesses in the City of Oak Grove."  (Defendants' Response, Dkt. # 36, at 5).   The City further notes that "statistics were kept for the number of police calls required at sexually oriented businesses." However, it also says that "[a]lthough the numbers are not available at this time, it is apparent that these numbers were studied in the enactment of the ordinance and used to help determine the initial license fee." *Id.*, at 6.  The Court cannot, however, simply take the city at its word that such statistics exist and were so used, because, as noted above, the City bears the burden of proving the close relationship between the fee and the cost to the City of enforcing the Ordinance.[2]  Like our sister court in *Kentucky Restaurant Concepts, Inc.*, the Court finds that the City of Oak Grove's proof of the connection between its license fee and the cost incurred by it in enforcing the Ordinance does not meet its burden and is therefore unconstitutional.

**Severability of the License Fee Provision**

Upon determining that the license fee provision is unconstitutional, the Court is now faced with the issue of whether it may enjoin the enforcement of only the license fee provision or

---

[2]Further, the Court notes that the deposition testimony cited by the City in support of the proposition that the statistics exist refers to log books allegedly kept by the Police Department of the number of times police were called to a sexually-oriented business or they, on an officer's whim, did a "walk-through" of a sexually-oriented business to check for violations of the Ordinance.  A cost calculation may have been possible on the basis of such data in combination with other data, but there is no suggestion that a cost calculation was ever made.

whether it must enjoin enforcement of the entire statute.[3]  "The Supreme Court has held that

invalid portions of a statute should be severed unless it is clear that the Legislature would not

have enacted those provisions which are constitutional, independent of those provisions which

are not." *Plain Dealer Publ'g Co. v. City of Lakewood,* 794 F.2d 1139, 1147 (6th Cir.1986), *aff'd*

*in part and remanded*, 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (citing *INS v.*

*Chadha*, 462 U.S. 919, 931, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983)). "Moreover, a provision is

presumed severable if what remains after severance is fully operative as a law." *Id.* (citing

*Chadha*, 462 U.S. at 934, 103 S.Ct. 2764).  Section VII of the Ordinance provides:

> If any section or part of any section or paragraph of this ordinance is declared invalid or unconstitutional for any reason, it shell [sic] not invalidate or impair the validity, force or effect of any other section or sections or part of a section or paragraph of this ordinance[.]

To determine whether the injunction should cover enforcement of the entire Ordinance or simply

the licensing fee provision (Section 3.04), then, the Court must determine whether the Ordinance

without this provision would be functional; the Court believes that it would.  The Court cannot

say that the Oak Grove City Council would not have wished to regulate sexually-oriented

businesses in the ways that the Ordinance as it stands under this order (i.e., without the license

fee provision) does.  The City of Oak Grove is free, of course, to amend the Ordinance to include

a licensing fee that comports with the requirements of the First Amendment; the amount of a

constitutional licensing fee will not necessarily be less than the current fee, but will be in any

amount that is closely tied to the cost incurred by the City of Oak Grove in enforcing the

---

[3]Defendants argue that the issue of severability was decided in the September, 2004 summary judgment; however, it makes little sense to say that the summary judgment implicitly ruled on the issue of severability while declining to address the constitutionality of the provision.

Ordinance.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **DENIED**.

An appropriate order shall issue.